UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF LOUISIANA

IN RE:                                                    CASE NO.

**LARRY GALLOWAY**                                        **15-12646**
**ROBIN DAVID GALLOWAY**                                  SECTION A

DEBTOR(S)                                                 CHAPTER 13

<u>**REASONS FOR DECISION**</u>

On September 8, 2017, the Order for Nelson Rivers ("Mr. Rivers") to show cause why he should not be held in civil contempt and sanctioned came before the Court.[1]  The Court continued the matter to October 5, 2017, and issued an Order for Wayne Aufrecht ("Mr. Aufrecht") to show cause on the same date why he should not be held in civil contempt and sanctioned.[2]  At the conclusion of the hearing, the Court took the matters under advisement.

Also before the Court is the Motion to Recuse Judge filed by Mr. Rivers, which was taken under advisement without hearing.[3]

**I.  Background**

Counsel appearing in the Eastern District of Louisiana Bankruptcy Court ("USBC") must register  for and accept service of all pleadings, notices of hearing and other communications by the Court through the CM/ECF system and their registered email account.[4]

---

[1] P-46.

[2] P-61.

[3] P-66.

[4] Local Rule 2002-1(B)(1)(a) provides:

Service of all pleadings or notices of hearing by electronic notice to Electronic Filers is the equivalent of service upon such party by first class mail, postage prepaid.  Notice by electronic means is complete upon transmission. FRBP 9036.

Attorneys authorized to practice in the USBC in connection with the representation of chapter 13 debtors agree to accept compensation under one (1) of two (2) methods. The first and most prevalent process entitles counsel to a fixed fee contained in an agreement with the client. Commonly called the "no look" fee, it entitles counsel to a predetermined fee in exchange for the performance of a specified number of services over the life of the case. Both the fee and the scope of services required are set by the USBC under a General Order.[5]

Although the Court has the power to review all fee requests by debtor's counsel for both reasonableness and competency,[6] provided counsel performs his or her duties under the no look contract, counsel is not required to seek court approval of the fee prior to its payment.[7] The no look fee is payable in installments spanning the life of the debtor's case which may extend as long as five (5) years.

---

"*Electronic Filer* means a person who has a CM/ECF password." Local Rule 9001-1(H.).

The Administrative Procedure 6 of the Clerk's Office also provides:

A. By completing and submitting the application for a password in the ECF system, the user agrees to accept email service and agrees to waive service of process by mail, by hand, by facsimile, or otherwise.

B. The ECF system automatically generates a "Notice of Electronic Filing" at the time of docketing upon all parties who have consented to electronic service. Service of the Notice of Electronic Filing upon users who have ECF passwords with the court is the equivalent of service by the electronic filer of the court of the document upon such party by first class mail, postage prepaid, ...

[5] General Order 2011-1.

[6] 11 U.S.C. § 330.

[7] *See In re Cahill*, 428 F.3d 536 (5th Cir. 2005).

2

The trustee compensates counsel from payments made by the debtor under the plan of reorganization. The bulk of the fee is earned at the beginning of the case provided confirmation of a plan of reorganization is obtained and counsel assists with any post-confirmation responsibilities necessary to effectuate its implementation. Annual stipends are also payable at the end of each year the debtor remains in the case and complies with the plan's requirements. The stipends are designed to compensate counsel for follow up or additional work necessary to maintain the case until a discharge is earned. Fees based on hourly rates may also be requested for post-confirmation work involving court appearances and the filing of additional pleadings.

General Order 2011-1 obligates debtor's counsel to represent the interests of the debtor to the best of his abilities. He is specifically required to attend all hearings involving the debtor unless excused by court order or after a request and grant of permission to withdraw. All matters filed with the court are generally set for hearing by either special setting or on a predesignated hearing date. Unopposed matters may be granted without hearing if no objection is received by the deadline to file and the court finds the relief requested to be sufficiently supported by the pleading. However, some matters may remain on the hearing calendar even if no objection is lodged. They are typically heard for one (1) of three (3) reasons: 1) the Bankruptcy Code requires hearing and proof before relief can be granted; 2) the pleading insufficiently explains either the grounds for or the extent of the relief requested; or 3) relief is not warranted under the law or the facts as pled. In any case, counsel is required to attend the scheduled hearing.[8]

---

[8] Gen. Order 2011-1, Exh. A, ¶ 1(E); Local Rule 9013-1(F).

3

The second method of compensation allows chapter 13 counsel to charge a fee based on an hourly rate but requires the submission and approval of all fee requests through application to the court.

In a chapter 7 case, debtor's counsel is paid by the debtor prior to filing the case.  Local Rule 4002-1(D) enumerates duties that debtor's counsel must perform to earn his fee.

## II. Procedural History

As of July 2017, Mr. Rivers represented thirty (30) debtors in chapter 13 cases pending in the Eastern District of Louisiana.  Twenty (20) other cases under chapter 7 were also pending. In every chapter 13 case, including the *Galloway* case, Mr. Rivers agreed to accept the no look fee for his representation.

On July 13, 2017, the Chapter 13 Trustee, Mr. S.J. Beaulieu ("Trustee"), filed a Motion to Dismiss the case of Larry and Robin Galloway for failure to make plan payments.[9]  The Motion was set for hearing on August 22, 2017, at 9:00 a.m.  On July 13, 2017, Mr. Rivers was notified of the filing of the Motion and its hearing date by electronic service through the Court's CM/ECF system. On August 18, 2017, a hearing calendar was also noticed to Mr. Rivers confirming that the Motion would be heard by the Court on the scheduled date.

On August 22, 2017, the Court called the matter for hearing, but Mr. Rivers did not appear. Public comment from the attorneys and Trustee's counsel present in court, informed that Mr. Rivers had retired, was no longer practicing law, had moved from New Orleans and his practice had been taken over by Mr. Aufrecht.

---

[9] P-44.

4

The record of the case did not reflect the substitution of Mr. Aufrecht as counsel for the Galloways.  The Motion was continued to another date, and an Order to Show Cause was issued against Mr. Rivers for failing to attend the hearing ("Rivers OSC").[10]

After concluding the matters set for hearing, the Court confirmed with the Clerk of Court that Mr. Rivers had not advised of his retirement, asked for a change in his email account or notified the Court of his change of address.  A list of all pending matters in this Court was compiled and each record was checked for Motions to Withdraw as Counsel of Record and/or Substitute Counsel.  Of the fifty (50) pending cases, only five (5) contained either Motion.

The Order to Show Cause was scheduled for hearing on September 12, 2017, and Mr. Rivers was served and noticed of the hearing date on August 24, 2017.[11]  After he received service of the Order, Mr. Rivers contacted the Court's chambers to request permission to appear by phone.  The Local Rules of this Court do not permit counsel to appear by phone in any matter in which they are expected to argue.[12]  On August 31, 2017, Mr. Rivers filed a Motion to Continue Hearing or, In the Alternative, Participate by Telephone explaining that he had moved "over 2000 miles away."[13]  The Motion requested special permission to attend by phone due to the expense required to travel to New Orleans.[14]  The Court agreed and moved the hearing date to a special setting on September 8, 2017,

---

[10] P-46.

[11] P-48.

[12] Local Rule 9013-1(F).

[13] P-51.

[14] *Id.*

5

in order to accommodate Mr. Rivers' request.[15]  As part of the continuance, Mr. Rivers was informed

by telephone that a list of all of his pending cases had been compiled, and Motions to Substitute and

Withdraw had been filed in only five (5).  He was notified  that these cases would also be considered

in connection with his Order to Show Cause.  The list of Mr. Rivers' pending cases was emailed to

him at his request on August 30, 2017 at 1:44 p.m.

    The hearing was conducted on September 8, 2017.  Mr. Wiebelt, counsel for the Trustee, was

present, and Mr. Rivers appeared by telephone.  Due to problems with the transmission of the call,

Mr. Rivers had difficulty hearing either the Court or Mr. Wiebelt during the hearing.  Because of the

communication issues and Mr. Rivers' insistence that Mr. Aufrecht was  responsible for the

representation of Mr. Rivers' clients following his retirement, this Court issued an additional Order

to Show Cause against Mr. Aufrecht ("Aufrecht OSC").[16]  The hearing was continued on the Rivers

OSC until October 5, 2017, at which time the responsibility for the client representations would be

decided by the Court.[17]

    The second hearing on the Rivers OSC and first on the Aufrecht OSC was held on October

5, 2017.  Mr. Aufrecht and Mr. Rivers were present at the hearing.[18]  Testimony was offered by Mr.

Rivers, Mr. Aufrecht and a third witness, Sherry Swanson ("Ms. Swanson").  Emails between Mr.

Aufrecht and Mr. Rivers were  introduced into evidence and arguments were heard.  From this

record, the Court makes the following findings of fact.

---

[15] P-52.

[16] P-61.

[17] P-59.

[18] P-69.

## III.  Facts

Mr. Rivers and Mr. Aufrecht are both sole practitioners authorized to practice in the USBC. Both have made numerous appearances before the Court and are familiar with the Court's Orders and procedures.   Both maintained offices in Covington, Louisiana.  Ms. Swanson was Mr. Rivers' full time secretary, but she worked extra hours for Mr. Aufrecht at his office.

After returning from a vacation in Oregon in early July, Mr. Rivers informed Ms. Swanson that he was retiring on July 31, 2017, and moving to Oregon.  The decision surprised Ms. Swanson, his twenty-five (25) year employee, as he had given her no prior indication of his consideration or intent to retire.

On July 11, 2017, Mr. Rivers approached Mr. Aufrecht with an offer to sell Mr. Aufrecht his law office building ("Building").  Mr. Rivers represented that he was retiring on July 31, 2017, and moving out of state.   A few days later, Mr. Aufrecht and Mr. Rivers reached an agreement whereby Mr. Aufrecht would purchase the Building and keep Mr. Rivers' office telephone number as well as his sign. Mr. Aufrecht did not, however, agree to assume responsibility for Mr. Rivers' practice or clients.  Following this decision, Mr. Aufrecht reached an agreement with Ms. Swanson for full time employment.

In July 2017, if Mr. Rivers' clients called or went in to his office, they were advised of his upcoming retirement. No contact was made with other clients on the subject.

Mr. Rivers transferred the Building to Mr. Aufrecht on July 20, 2017.  The sale included only the Building,  not Mr. Rivers' law practice.  Mr. Rivers continued to use the Building through July 31, 2017.

On July 31, 2017, Mr. Rivers hired movers to move his desk and some file cabinets. However, he left all of his bankruptcy files in the office for both active and closed cases. Mr. Aufrecht was not aware that Mr. Rivers was leaving his client files.

Mr. Aufrecht moved into the Building on August 1, 2017. Mr. Aufrecht and Ms. Swanson boxed Mr. Rivers' files and put them in the attic of the Building.

Mr. Rivers moved to Oregon on August 1, 2017, but did not change his email or mailing address with the Bankruptcy Clerk's Office.

Following his retirement and move to Oregon, Mr. Rivers did not return to New Orleans in order to represent his clients. Specifically, Mr. Rivers failed to attend any section 341 meetings of creditors or hearings scheduled after July 31, 2017.[19]

Mr. Rivers did not monitor his email the first three (3) weeks of August 2017. On August 1, 2017, Mr. Rivers was listed as counsel in fifty (50) open Chapter 7 and 13 cases. Two (2) cases were dismissed by the debtors prior to August 1, 2017, but not yet closed.[20] Two (2) cases had been reopened for the sole purpose of canceling liens, which had already been accomplished by Mr. Rivers,[21] and a discharge had been entered in seven (7) other cases.[22] Thirty (30) chapter 13 cases and nine (9) chapter 7 cases remained open and active at the time of his retirement, including five

---

[19] Mr. Rivers did not attend the section 341 meetings in case numbers 17-11649, 17-11650, 17-11683, 17-11728, 17-11890, 17-11891, 17-11892, 17-11893, 17-11976, 17-12233, and 17-12235. (In case numbers 17-12233 and 17-12235, Mr. Aufrecht substituted as counsel prior to the section 341 meeting of creditors.)

[20] Case nos. 16-12964 and 17-10401.

[21] Case nos. 10-14221 and 14-12301.

[22] Case nos. 12-11074, 16-11528, 16-12873, 16-12909, 17-10474, 17-10568, 17-10677.

8

(5) new bankruptcy cases filed in late July 2017, after he made the decision to move to Oregon.[23] In

addition, Mr. Rivers filed two (2) new cases on Aug. 23, 2017, after he moved to Oregon.[24]

Larry and Robin Galloway ("Debtors") filed a Voluntary Petition for Relief under Chapter

13 of the Bankruptcy Code on October 13, 2015, with Mr. Rivers as Debtors' counsel.  Debtors'

Chapter 13 plan ("Plan") was confirmed on December 22, 2015.[25]  Debtors' Plan requires them to

make monthly payments of  $166.33 to Trustee for sixty (60) months.[26]

On July 13, 2017, Trustee filed a Motion to Dismiss for failure to make plan payments in this

matter and noticed it for hearing on August 22, 2017, at 9:00 a.m.[27]  Mr. Rivers was served

electronically at nelsonrivers@gmail.com.  A Response[28] was filed to the Motion on behalf of

Debtors; however, Rivers failed to appear at the hearing.

Mr. Rivers represented at the hearing that he was unaware of the Motion to Dismiss or its

scheduled hearing date despite service to his email and the filing of the Response under his PACER

password.

Following Mr. Rivers' retirement, Ms. Swanson continued to receive emails and notices at

Mr. Rivers' former office pertaining to Mr. Rivers' pending and active cases.  She also received calls

---

[23] Case nos. 17-11890, 17-11891, 17-11892, 17-11893 were filed by Rivers on July 19,
2017.  Case no. 17-11976 was filed by Rivers on July 27, 2017.

[24] Case nos. 17-12233 and 17-12235.

[25] P-34.

[26] P-2.

[27] P-44.

[28] P-45.

9

from clients and opposing counsel in these matters.  She would handle any issue or question she

believed appropriate.  On receipt of the Motion to Dismiss and in an effort to protect the Galloways,

Ms. Swanson contacted the Trustee's office.  After talking to the Trustee's staff, she was advised that

the Galloways had paid and were current.  As a result, she took no further action.

The day before the hearing on the Motion to Dismiss, Ms. Swanson noticed  that it was still

on the hearing docket.  She took it upon herself to contact another attorney practicing in the USBC

to request an appearance on behalf of the Galloways.  She represented to counsel that Mr. Rivers was

unable to attend.  Ms. Swanson was told that the attorney's associate would represent to the Court

that the Galloways were current on their payments.  The designated counsel did not appear and due

to an error in the Trustee's office, the Trustee continued to pursue the dismissal of the case.

Because the Galloways' counsel was not present, the Court continued the hearing on the

Motion to Dismiss and issued the Rivers OSC, rather than dismissing the case.  Both the Motion to

Dismiss and Rivers OSC were set for hearing on September 12, 2017, the Court's next Motion Day,

and the Certificate of Service was served both electronically and by first class mail on Mr. Rivers

on August 24, 2017.[29]

On August 25, 2017, Mr. Rivers filed a Response[30] to the Rivers OSC representing:

•       Another attorney, Mr. Aufrecht, took over his office and hired his secretary.
•       Mr. Rivers retired in July and moved 2000 miles away from New Orleans.
•       Debtors brought their payments current on August 17, 2017.
•       His former secretary attempted to contact another attorney that morning but was
        unable to reach him.

---

[29] P-48.

[30] P-47.

10

On August 25 and 30, 2017, Mr. Rivers sent emails to his clients advising that he had retired and moved out of state, as well as asking for their consent to Mr. Aufrecht's substitution as their counsel.[31]   Mr. Aufrecht emailed Mr. Rivers on August 30, 2017, to confirm he was working to substitute as counsel in all of Mr. Rivers' cases.[32]

On August 31, 2017, Mr. Aufrecht filed a Motion to Substitute Counsel in the *Galloway* case.[33]   On the same date, Mr. Rivers filed a letter authorizing Trustee to remit all future attorney's fees to Mr. Aufrecht.[34]

On September 1, 2017, Mr. Aufrecht emailed Mr. Rivers to confirm their agreement.[35]   Mr. Rivers and Mr. Aufrecht made the following fee arrangement as to cases in which Mr. Aufrecht substituted as counsel:

1) Mr. Aufrecht  "will receive the remaining no-look fees and bonus fees for any cases confirmed on or after August 1, 2017..."

2) Mr. Rivers "will receive any remaining no-look fees and bonus payments for cases confirmed before August 1, 2017..."[36]

---

[31] Exh. C and R-1.

[32] *Id.*

[33] P-49.

[34] P-50.

[35] *Id.*

[36] P-68, Exh. A. The exhibits to P-68 was accepted as evidence by P-71.  At the October 5, 2017,  hearing, Mr. Rivers and Mr. Aufrecht clarified that if a hearing was necessary in a case confirmed before August 1, 2017, Mr. Aufrecht would receive the fees.

11

On September 7, 2017, Mr. Aufrecht emailed Mr. Rivers asking him to discuss with the Court the issue of substituting as counsel in cases where client consent had not been obtained.[37] Mr. Rivers responded that he believed "silence signifies consent."[38] Later that day, Mr. Rivers emailed Mr. Aufrecht that he sent additional emails in twenty-two (22) cases in which he had not received a response from clients.[39]

At the hearing on September 8, 2017, Trustee represented that Debtors' Plan payments were current. The Court denied Trustee's Motion to Dismiss. With regard to the Rivers OSC, Mr. Rivers represented that Mr. Aufrecht was counsel of record in all of the pending cases, having acquired his practice on his retirement. This included cases filed in late July and August 2017. The Court ordered Mr. Rivers to provide an accounting of all fees received in every case pending in the USBC.[40] The Court also continued the Rivers OSC to October 5, 2017.

The Court issued the Aufrecht OSC, ordering Mr. Aufrecht to appear on October 5, 2017, and show cause why he should not be held in civil contempt and sanctioned for failure to timely substitute as counsel of record for all debtors represented by Mr. Rivers.[41]

---

[37] Exh. A-1.

[38] *Id.*

[39] Exh. R-1.

[40] P-59.

[41] P-60.

## IV.  Law and Analysis

### A.  Motion to Recuse

A judge must "disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[42]  A judge must also disqualify himself "[w]here he has a personal bias or prejudice concerning a party."[43]  "The goal of section 455(a) is to avoid even the appearance of partiality."[44]  "The bankruptcy judge before whom the matter is pending determines whether disqualification is required."[45]  "[A] federal judge has a duty to sit where not disqualified [that duty] is ... as strong as the duty to not sit where disqualified."[46]

Mr. Rivers contends that the undersigned "refused to provide due process and equal protection to [him] and behaved in a manner inconsistently with [his] right to a full, fair, and impartial hearing."[47]

### 1.  Due Process

Mr. Rivers contends that he was denied due process at the September 8, 2017, hearing on the Rivers OSC by the Court's extension of the hearing outside the scope of the *Galloway* case without giving him the opportunity before the hearing to prepare.

---

[42] 28 U.S.C. § 455(a), which is made applicable to this proceeding by F.R.B.P. 5004(a).

[43] 28 U.S.C. § 455(b)(1).

[44] *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 860, 108 S.Ct. 2194, 2203 (1988) (citation omitted).

[45] F.R.B.P. 5004, Advisory Committee Note (1987).

[46] *Sensley v. Albritton*, 385 F.3d 591, 598-99 (5th Cir. 2004) (quoting *Laird v. Tatum*, 409 U.S. 824, 837, 93 S.Ct. 7, 34 L.Ed.2d 50 (1972)).

[47] P-66.

In Mr. Rivers' Response[48] to the Rivers OSC filed prior to the September 8, 2017, hearing, he represented to the Court that he "retired in July and moved 2000 miles away." This prompted the Court's concern over Mr. Rivers' other pending cases. The Court emailed Mr. Rivers on August 30, 2017, advising Mr. Rivers that due to this concern it had the Clerk of Court run a list of Mr. Rivers pending cases and attached that list.

When Mr. Rivers requested permission to attend the hearing by phone he was also advised of the Court's concerns regarding his entire case load.

The hearing on September 8, 2017 was to be a full evidentiary hearing on the matter. However, it was quickly evident that Mr. Rivers was not only ill prepared but had no evidence to present regarding either the *Galloway* or other cases pending in the USBC. Mr. Rivers' sole explanation for his failure to appear and monitor his clients' cases was to assert that Mr. Aufrecht was responsible. That coupled with the difficulty in transmission prompted the Court to continue the hearing to October 5, 2017. In an effort get to the bottom of the matter, the Court issued the Aufrecht OSC and Mr. Rivers was ordered to provide an accounting of fees received in the pending cases. Thus, Mr. Rivers had at least one (1) month's notice that all of his cases were in question and was afforded a full evidentiary hearing October 5, 2017, on all issues of concern to the Court.

The Court concludes that Mr. Rivers was afforded both notice and the opportunity to present any relevant evidence on the matter. As a result, Mr. Rivers was afforded due process.

---

[48] P-47.

14

## 2. Bias

Mr. Rivers contends, the undersigned showed bias because at the September 8, 2017, hearing she had decided he had no hope of completing his cases and had abandoned his clients. Mr. Rivers asserts that this is shown by the undersigned's insistence at the September 8, 2017, hearing that by the next hearing, he should find counsel to substitute in all of his cases.

Mr. Rivers freely admitted in his Response and Motion to Continue Hearing or, In the Alternative, Participate by Telephone that he had retired, moved 2000 miles away, and did not want to incur the expense of traveling to New Orleans to appear at a Court hearing. At the September 8 hearing, he was offered the opportunity to present evidence and testimony but had none. He also deflected any responsibility by alleging that Mr. Aufrecht had agreed to take on all of his active files.

For this reason, the Court ordered that substitutions be filed by the continued hearing date. It also continued the hearing because it was evident that Mr. Rivers was wholly unprepared to address the Court's concerns and Mr. Aufrecht was not present to address his allegedly contributing conduct.

The Court has shown no bias towards Mr. Rivers but has instead acted upon his very representations to the Court in an effort to protect the interests of debtors and creditors alike. The Court has also given Mr. Rivers ample opportunity to present evidence in response to the Rivers OSC. As a result, the Court's instruction that substitute counsel be enrolled prior to the continued hearing date does not establish bias.

### 3.  Additional Bias and Due Process Arguments

Mr. Rivers contends that the undersigned also denied due process and showed bias by deciding at the September 8, 2017, before giving him the chance to present his case and making a factual finding, that sanctions would be issued at the conclusion of the next hearing.  Mr. Rivers further asserts that the undersigned showed bias by accusing him of failing to appear at "hearings," while he only failed to appear at one (1) hearing.

Mr. Rivers was given a full opportunity to present his case on September 8, 2017.  He failed to do so, not out of surprise or Court conduct, but because he was wholly unprepared and without evidence.  In an effort to afford Mr. Rivers another opportunity to explain his conduct, the Court, on its own motion, continued the Rivers OSC.    The continued October 5, 2017,  hearing lasted two (2) hours during which  Mr. Rivers was afforded every opportunity to offer evidence, testimony and argument.  The hearing was not concluded until both Messrs. Aufrecht and Rivers rested their respective cases.

As of August 30, 2018, the records of forty-five (45) of fifty (50) pending cases in the USBC reflected his continued representation after he admitted retiring.  The records also reflect sixteen (16) noticed and conducted meetings of creditors or hearings in the period between his retirement and the September 8, 2017, hearing.

The Court exercised its authority to regulate the fees charged by Mr. Rivers in these cases for duties he failed to perform.

### 4.  Sanctions in All Cases in the Eastern District

Mr. Rivers also contends that it is improper for the undersigned to consider sanctions in cases that are assigned to another judge.

16

As Chief Judge of the Bankruptcy Court for the Eastern District of Louisiana, it is within the authority of this Court to disgorge or deny fees for any attorney authorized to practice before the Court who is found to be in violation of the Court's Local Rules, ethical and professional responsibilities.

The sanctions imposed in these cases are entered as a result of Mr. Rivers' misrepresentations to this Court and made during the two (2) hearings on the Rivers OSC. As a result, the sanctions are not applicable to any other case pending in the USBC.

### B. Rivers OSC

#### 1. Failure to Appear at the August 22, 2017, Hearing in *Galloway*

Local General Order 2011-1 sets the "no look fee" a Chapter 13 debtor's counsel may charge without application to the Court. The General Order also details enumerated services which must be included. General Order 2011-1 requires Chapter 13 debtor's counsel in part to:

> Prepare and file responses to motions filed against debtor(s)-even if the response is a statement that the debtor(s) have no opposition to the relief requested... and attend the scheduled hearing;...[49]

Mr. Rivers moved 2,000 miles from the district but maintains that he intended to continue to represent his clients. In fact, the testimony elicited at the hearing establishes that Mr. Rivers had no intention of personally representing these clients after August 1, 2017.

After Mr. Rivers' sudden announcement of retirement, he took less than thirty (30) days to wind down his practice and advise his clients of his retirement. In fact, Mr. Rivers failed to formally notify any clients of his move or retirement. Instead, only those that happened into his office or called during July 2017 were advised of his plans.

---

[49] Gen. Order 2011-1, Exh. A, ¶ 1(E).

17

After moving from his office on July 31, 2017, Mr. Rivers left *all* his active files in the Building.  After moving, Mr. Rivers admitted that he did not monitor his emails or Pacer accounts despite the fact that these were his primary means of maintaining his responsibility to his clients. Nor did he make any plans for others to take on this responsibility.  Mr. Rivers represented that Ms. Swanson was free to give his cell phone number to any clients who called.  This appears to be the only effort he made to stay in communication with his clients or monitor their cases.

Mr. Rivers has admitted that despite notice in the *Galloway* case of the filing of the Motion to Dismiss and hearing date, he did not know of either because he was not monitoring his court account.  Given that a Response was filed under Mr. Rivers' PACER account, the Court concludes that Ms. Swanson prepared and filed the Response without Mr. Rivers' review or instruction.

Mr. Rivers also violated La. Rules of Prof. Conduct 1.3 which provides, "A lawyer shall act with reasonable diligence and promptness in representing a client."  As the comments to the ABA Model Rule 1.3 indicate, "Unless the relationship is terminated as provided in Rule 1.16, a lawyer should carry through to conclusion all matters undertaken for a client."  Although he continued to represent the Galloways as counsel of record, Mr. Rivers' failure to monitor the progress of a pleading so critical to the continued participation of the Galloways in chapter 13 constitutes a failure of his duties to his clients.  But for the Court's requirement of attendance, the Motion to Dismiss would have been granted for failure to prosecute the Response, and the Galloways would have lost their ability to obtain a discharge.

### 2.  Failure to Represent Other Clients

### a.  General Duties of Bankruptcy Counsel

Gen. Order 2011-1 and Local Rule 4002-1(D) require, among other things, that debtor's attorneys counsel their clients as needed; attend the section 341(a) meeting of creditors; file responses to motions against their client and attend the scheduled hearing; attend the confirmation hearing as required in a chapter 13 case; and advise the debtor(s) of their obligations and duties pursuant to the Bankruptcy Code and Rules, applicable court orders, and if applicable, the provisions of their chapter 13 plan.[50]

The filing of a bankruptcy proceeding under any chapter of the Code requires the preparation of a Petition for Relief, Schedules of Assets and Liabilities, a Statement of Financial Affairs and the submission of various supporting documents (*i.e.*, insurance certificates, 60 days of payroll stubs or

---

[50] Gen. Order 2011-1 provides that debtor's counsel in a chapter 13 case, in order to earn the no look fee, must:

> E.  Prepare and file responses to motions filed against debtor(s)-even if the response is a statement that the debtor(s) have no opposition to the relief requested (Section A only) - and attend the scheduled hearing.

> F.  Attend the section 341(a) meeting of creditors.

Local Rule 4002-1(D) provides:

> As a condition of employment, the representation by counsel of a chapter 7 debtor must include, but is not limited to:

> 2.  Attendance at the section 341(a) meeting; ...

> 7.  Prepare and file responses to motions filed against debtor(s)- even if the response is a statement that the debtor(s) have no opposition to the relief requested and attend the scheduled hearing, if requested by the court.

19

Case 16-11380   Doc 39   Filed 03/12/18   Entered 03/12/18 15:22:58   Main Document
Page 20 of 37

profit and loss statements, the current year's tax returns and a certificate that all tax returns for the preceding four (4) years have been filed, proof of charitable, medical or other expenses).

Following the institution of a bankruptcy case, every debtor is examined under oath by a trustee at a section 341(a) meeting of creditors. The examination allows the trustee to obtain additional explanation regarding disclosures in the documents filed as well as to question a debtor regarding possible omissions. Often additional documentation or information is required to support the assertion or omission by a debtor. For example, if a debtor has not disclosed any interest in a succession but upon examination by the trustee admits that a close relative has died, the will or judgment of possession for the deceased may be required. Similarly, if a debtor is recently divorced or separated the Judgment of Divorce and Separation and Division of Community Assets will be requested. Appraisals for real property or jewelry to support declared values may also be needed. Information on retirement accounts, withdrawals, nonexempt household furnishings are also commonly discussed. In short, any question designed to uncover the financial condition of the debtor, his assets, liabilities or income, and any transfers made within four (4) years of filing are germane to the examination. The failure to properly disclose assets, liabilities, income or prepetition transfers carries with it the threat of a denial of discharge. For this reason, it is imperative that the lawyer representing the client in the preparation of the case attend and represent the debtor during an examination designed to plumb the sufficiency of the disclosures made at filing.

Assuming that the debtor has properly disclosed his financial condition, a chapter 7 case will proceed to discharge without further effort. On occasion, an objection to discharge or additional work to give the discharge effect (*i.e.*, the removal of liens recorded on the public record to secure debts discharged) will be needed.

In a chapter 13 case there is much more to be done. Following the meeting of creditors and assuming all information has been relayed to the trustee, debtor's counsel must review proofs of claim as they are filed for accuracy, status, and treatment in a proposed plan of reorganization. Most claims are entitled to *prima facie* validity unless formally challenged by objection and hearing. Those that are not owed, subject to challenge, subject to challenge based on status or amount claimed, or filed for amounts or priority not previously accounted for, must be handled through negotiation, objection or inclusion in an amended plan even before confirmation. Given the Code's requirements regarding payment of secured, priority and unsecured debt, confirmation can not be obtained unless the claims are reconciled with the payments offered under the plan. Even after confirmation, counsel must monitor claims for new filings that would upset the plan's feasibility under the Code. It is not uncommon for a plan to be modified following confirmation to account for a post-confirmation claim.

It is also very common for plans to require modification during their term based on unanticipated developments in a debtor's life. Illness, job loss, changes in income, divorce, death, extraordinary expenses or casualties, related to the debtor, his dependents or extended family often occur during the three (3) to five (5) years a plan is in effect. The result is a need to adjust the plan's payments to account for the change while maintaining the minimum payment requirements of the Code. It is a rare case that experiences no modification and completes without several appearances by debtor's counsel on the way to discharge. For this reason, the no look fee includes annual stipends to compensate debtor's counsel for services rendered after the initial confirmation of a plan, and requires the physical presence of counsel at hearings to ensure an active, robust representation.

21

**b.  Failure by Mr. Rivers to Perform His Duty**

Although Mr. Rivers planned to retire effective on July 31, 2017, he filed five (5) new cases in late July 2017, as well as two (2) cases post-retirement in August 2017.  Mr. Rivers has offered no explanation as to why he filed two (2) cases after he retired and moved to another state.   Nor has he explained why he believed he could represent five (5) other clients in cases filed just days before he retired.  At the time the cases were filed, Mr. Rivers was fully aware that he would not be present to represent his clients at the meetings of creditors and for the chapter 13 confirmation hearings in these cases.  Nor would he be available to represent them through court appearances, filings or otherwise throughout their cases even though his representation extended  until the closure of each case.

As to existing clients, with few exceptions, Rivers did not inform them of his retirement. Rather than notify each and every client of his change of address and retirement, Mr. Rivers remained mum in an effort to maintain the income generated by each representation both earned to date and subject to future accrual for services to be rendered.

Given Mr. Rivers experience in bankruptcy, he was surely aware that most if not almost all cases  pending in chapter 13 would require his intervention and expertise before completing.  For this reason, it is inexplicable why he thought he could maintain these professional relationships from thousands of miles away and without the need to appear in court.

After August 1, 2017, eleven (11) section 341(a) meetings of creditors were held for debtors represented by Mr. Rivers, all of which required his appearance under Gen. Order 2011-1 or Local

22

Rule 4002-1(D).[51]  In addition, hearings were noticed in eight (8) other cases.[52]  Six (6) of those

hearings required his presence under General Order 2011 or Local Rule 4002-1(D).[53]

Specifically, the meetings of creditors or hearings occurring after Mr. Rivers' retirement on

August 1, 2017, are:

| Case | Chapter | Matter | Date of appearance | Attorney who appeared |
|---|---|---|---|---|
| 15-12646 | 13 | Motion to Dismiss | 8/22/17 | None |
| 15-12782 | 13 | Motion to Dismiss | 8/30/17 | None[54] |
| 16-11380 | 13 | Motion to Dismiss | 10/4/17 | Resolved without hearing |
| 16-11531 | 13 | Motion to Dismiss | 10/18/17 | Resolved without hearing |
| 16-12272 | 13 | Motion to Dismiss | 10/18/17 | Phillip K. Wallace[55] |
| 17-11243 | 13 | Motion to Lift Stay | 1/10/18 | William Cherbonnier[56] |
| 17-11649 | 7 | § 341 Meeting | 8/3/17 | John Menszer |
| 17-11650 | 7 | § 341 Meeting | 8/3/17 | John Menszer |

---

[51]  Case nos. 17-11649, 17-11650, 17-11683, 17-11728, 17-11890, 17-11891, 17-11892, 17-11893, 17-11976, 17-12233, and 17-12235.

[52]  Case nos. 15-12782, 16-11380, 16-11531, 16-12272, 17-11243. 17-11683, 17-11890, 17-11891.

[53]  The Motions to Dismiss in case nos. 16-11380 and 16-11531 were resolved without hearing.

[54]  Trustee's Motion to Dismiss was granted on 8/31/17.  Then on 9/1/17, Trustee filed an Ex Parte Motion to Vacate the Order Dismissing the Case because "debtor supplied requested information."

[55]  Mr. Wallace substituted as counsel prior to the hearing.

[56]  Mr. Cherbonnier substituted as counsel prior to the hearing.

| 17-11683 | 13 | § 341 Meeting | 8/23/17 | Unknown |
| | | Obj. to Confirmation | 8/30/17 | Wayne Aufrecht[57] |
| 17-11728 | 7 | § 341 Meeting | 8/18/17 | Austin Taylor |
| 17-11890 | 13 | § 341 Meeting[58] | 8/16/17 | Unknown |
| | | Obj. to Confirmation | 9/12/17 | Wayne Aufrecht[59] |
| 17-11891 | 13 | § 341 Meeting[60] | 8/16/17 | Unknown |
| | | Obj. to Confirmation | 9/12/17 | Wayne Aufrecht[61] |
| 17-11892 | 7 | § 341 Meeting | 8/24/17 | Unknown |
| 17-11893 | 7 | § 341 Meeting | 8/24/17 | Wayne Aufrecht |
| 17-11976 | 7 | § 341 Meeting | 8/31/17 | Austin Taylor |
| 17-12233 | 7 | § 341 Meeting | 9/28/17 | Wayne Aufrecht[62] |
| 17-12235 | 13 | § 341 Meeting | 9/27/17 | Wayne Aufrecht[63] |

While it is true that alternate counsel appeared on Mr. Rivers' behalf in many of these instances, the circumstances of this participation bolsters rather than diminishes Mr. Rivers' dereliction of duty.

---

[57] Mr. Aufrecht substituted as counsel prior to the confirmation hearing.

[58] Trustee's notes show that the debtors need to file a new Schedule I because the wife no longer worked. Also, the Trustee filed an Objection to Confirmation. Mr. Aufrecht substituted as counsel after the section 341 meeting to file an Amended Schedule I.

[59] Mr. Aufrecht substituted as counsel prior to the confirmation hearing.

[60] Trustee's notes show that he needed the value of property.

[61] Trustee filed an Objection to Confirmation. Mr. Aufrecht substituted as counsel prior to the confirmation hearing.

[62] Mr. Aufrecht substituted as counsel prior to the section 341 meeting.

[63] Mr. Aufrecht substituted as counsel prior to the section 341 meeting.

Knowing that Mr. Rivers was in Oregon, it was Ms. Swanson who scanned the hearings or meetings scheduled in an effort to provide them with representation. It was Ms. Swanson who contacted other attorneys and requested that they appear on behalf of Mr. Rivers explaining that he was "unavailable." She did this of her own volition and without instruction from Mr. Rivers. Ms. Swanson did not explain to the counsel she contacted that Mr. Rivers had retired, nor did she provide them with the client file.

Mr. Rivers also failed to supply any of these *ad hoc* attorneys with an explanation of the case, a case file, summary, or information on the clients. In short, although Mr. Rivers was receiving notices, he completely abdicated his responsibility to his clients and relied on the efforts of his former secretary to meet their legal needs, without even knowing she would do so.

It was not until after the Rivers OSC was issued that Mr. Rivers sent emails to his clients advising of his retirement and departure out of state, as well as asking for their consent to Mr. Aufrecht's substitution as counsel.[64]

There can be no clearer example of a failure of professional responsibility or dereliction of duties owed under contract, Gen. Order 2011-1, or Local Rule 4002-1(D). Counsel's required attendance at hearings and meetings of creditors is not merely to take up space. It is expected that counsel with knowledge of the case, the particularities of a debtor's life and financial status, as well as one competent in the practice of bankruptcy law, will attend to represent the interest of the debtor.

In addition, an attorney violates La. Rule of Prof. Conduct 1.3 when he abandons the practice of law without making adequate arrangements to protect the interests of the attorney's clients.[65] Mr.

---

[64] Exh. C and R-1.

[65] *In re Boyer* 2009-1740 (La. 1/22/10), 26 So.3d 139, 140-144.

Rivers has alternatively asserted that he retired on July 31, 2017; Mr. Aufrecht was to assume the

representation of his clients; he sold his practice to Mr. Aufrecht; or Mr. Aufrecht or other counsel

would be asked to substitute in as counsel of record "as needed" or "as problems arose."  Continuity

of representation is a serious issue with sole practitioners.  Because clients may be prejudiced by the

sudden loss of counsel, the Louisiana Bar Association urges all solo practitioners to have a plan of

action on their incapacity, death or retirement.

The failure to communicate with clients regarding his retirement is a violation of La. Rule

of Prof. Conduct 1.4.[66]  Evidently, Mr. Rivers decided to retire without much thought.  After a quick

agreement to sell the Building, Mr. Rivers not only retired, but moved to Oregon leaving his active

files in the Building.  He made no attempts to contact clients and advise them of his decision.

Mr. Rivers also violated La. Rules of Prof. Conduct 1.1 which provides,

(a) A lawyer shall provide competent representation to a client.  Competent
representation requires the legal knowledge, skill, thoroughness and preparation
reasonably necessary for the representation.

Mr. Rivers relied on other counsel to appear on behalf of his clients without providing them the

necessary background or documentary support to properly represent his clients.  In addition,

Before a lawyer retains or contracts with other lawyers outside the lawyer's own firm
to provide or assist in the provision of legal services to a client, the lawyer should
ordinarily obtain informed consent from the client and must reasonable believe that

---

[66] La. Rule of Prof. Conduct 1.4(a) provides:

(a) A lawyer shall: ...

(2) reasonably consult with the client about the means by which the
client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter; ...

the lawyer's services will contribute to the competent and ethical representation of the client.[67]

In short, Mr. Rivers both filed cases and attempted to maintain a professional relationship with existing clients *post-retirement* knowing that he would not be able to fulfill his duties to his clients. It is hard to imagine a circumstance in which the duty to provide competent representation was so throughly given short shrift.

### 3. Unauthorized Practice of Law

Mr. Rivers also violated La. Rules of Prof Conduct 5.5(a) by allowing a secretary to perform the practice of law. Rule 5.5(a) prohibits a lawyer from assisting an unlicensed nonprofessional in the practice of law. An attorney who delegates to paralegals or legal secretaries tasks that call for the exercise of professional judgment by a licensed lawyer is in violation of this Rule.[68]

After moving to Oregon and by default, Mr. Rivers relied on Ms. Swanson to monitor his cases; communicate with clients, counsel and trustees; arrange for alternative counsel to appear at hearings and debtor examinations; provide relevant information to alternate counsel; and prepare and file pleadings on his behalf. While the Court is not blind to the fact that many sole practitioners rely perhaps too heavily on staff to perform some of the foregoing functions, none of this is sanctioned by the Rules of Professional Conduct. What is particularly troubling about this circumstance is the overall lack of supervision or responsibility asserted by Mr. Rivers. Not only was he disinclined to truly handle these cases, he was thousands of miles away from exercising direct supervision.

---

[67] Prof. Dane S. Ciolino, *Rule 1.1 Competence* (January 8, 2017), https://lalegalethics.org/louisiana-rules-of-professional-conduct/article-1-client-lawyer-relationship/rule-1-1-competence/

[68] *In re Sledge,* 2003-1148 (La. 10/21/03), 859 So.2d 671. *See also La. State Bar Ass'n v Edwins*, 540 So.2d 294, 299-300 (La. 1989).

The degree to which Ms. Swanson was expected to maintain client relationships, make decisions regarding legal matters, and select and prepare substitute counsel without instruction or supervision by Mr. Rivers is tantamount to the unauthorized practice of law.

### 4. Failure to Remit Unearned Fees

La. Rules of Prof. Conduct 1.5(f)(5) prohibit an attorney from retaining a fee for unearned services. Under the no look fee, Mr. Rivers was required to represent his clients throughout the term of their cases. As preciously explained, in order to earn the fee, Mr. Rivers was responsible for appearances at all hearings and required meetings, the preparation of all pleadings and any other action necessary for the diligent representation of the client. In addition to the appearances highlighted in the weeks following his retirement, Mr. Rivers is responsible for responses and appearances for any others during the terms of his clients' cases. For most of his pending cases, that period could easily stretch for years.

Mr. Rivers maintained his status as counsel of record without performing the services he contracted to provide. He planned to lean on the good will of his colleagues as long as they would tolerate his overreach. He admitted to doing this so he could be paid by, or retain payment already received from, his clients for duties he contractually owed them. Even after transferring files to Mr. Aufrecht, Mr. Rivers retained the rights to fees for "all cases confirmed before August 1, 2017."[69] This included unearned fees, particularly those accruing for future annual stipends in Chapter 13 cases.

In the cases in which Mr. Rivers represented chapter 7 debtors, he had already received his fee. Mr. Rivers filed four (4) chapter 7 cases in late July and August 2017. In violation of Local

---

[69] P-68, Exh. A. The exhibits to P-68 was accepted as evidence by P-71.

Rule 4002-1(D), Mr. Rivers had no intention of attending the section 341 meetings or any hearings in these cases and in fact did not.  In Mr. Rivers' chapter 13 cases, nine (9) hearings or meetings of creditors were attended by other counsel while two (2) had no counsel present, in the weeks following his retirement.

The Court concludes that Mr. Rivers' attempt to retain fees for services he did not plan to deliver is a violation of Gen Order 2011-1 or  Local Rule 4002-1(D) and Louisiana Rules of Prof. Conduct 1.5(f)(5).

### 5.  Misrepresentations to the Court

La. Rules of Prof. Conduct 3.3(a)(1) provides:

(a) A lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal ...

At the first hearing on the Rivers OSC on September 8, 2017, Mr. Rivers stated to the Court:

[T]he understanding I had with Mr. Aufrecht is that he would take over the ones that I had pending before I - - before I retired.[70]

Mr. Rivers directly represented to the Court that Mr. Aufrecht was responsible for his clients and any problems arising from conduct occurring after August 1, 2017.  Based on this representation, the Court issued the Aufrecht OSC.   In fact, Mr. Rivers knew that Mr. Aufrecht would not "take over the [cases] that [ he] had pending" upon his retirement.  He was well aware that Mr. Aufrecht had only purchased the Building.

---

[70] P-64, Tr. T. 9/8/17, p. 5, ll. 3-5.

On August 24, 2017, Mr. Rivers was noticed of the Rivers OSC.[71]  On August 31, 2017, he filed a Motion to Continue, or in the Alternative Participate by Telephone.[72]  In between these two (2) dates, Mr. Rivers made his first attempts to transfer his active files to other counsel.

Beginning on August 25, 2017, Mr. Rivers contacted Mr. Aufrecht about substituting as counsel of record in his cases.[73]  Mr. Aufrecht rightly required that Mr. Rivers' clients be notified and consent to his representation.  This prompted Mr. Rivers to send the first of two (2) emails notifying his clients that he had retired and that Mr. Aufrecht would represent their interests if they agreed.  Following the August 30, 2017, emails to clients,Mr. Aufrecht was able to file Motions to Substitute as Counsel of record in five (5) cases.  By the September 8, 2017, hearing, Mr. Aufrecht had filed Motions to Substitute as Counsel of record in twenty (20) cases.

Yet, at the September 8, 2017, hearing, Mr. Rivers repeatedly represented that Mr. Aufrecht was responsible for his clients.  He intentionally led the Court to believe that the gap in representation was as a result of Mr. Aufrecht's failure to substitute, rather than state the truth.

Because the Court was determined to uncover the reasons for the professional lapse, the Aufrecht OSC was issued, and a continued hearing on the Rivers OSC was scheduled.  At the hearing on October 5, 2017, Mr. Rivers continued his diversionary tactics.  It began with an offer into evidence of select emails between himself and Mr. Aufrecht.  The emails confirmed that Mr. Aufrecht had agreed to substitute into Mr. Rivers' cases.  Absent, however, was the entire email exchange.

---

[71] P-48.

[72] P-51.

[73] Exh. A-2.

Mr. Aufrecht quickly cleared up Mr. Rivers' attempts to shift the blame by supplying the entire communication sequence.  The email exchange  unequivocally showed that Mr. Rivers had not attempted to move his active files until after the Rivers OSC was issued.

The email from Mr. Rivers to Ms. Swanson dated August 25, 2017, confirms this as Mr. Rivers informed her that Mr. Aufrecht would substitute as counsel in six (6) Chapter 13 cases including the *Galloway* case.  As for Mr. Rivers' other pending Chapter 13 cases, counsel would be substituted if a problem arose: "If motions come up on any other 13s, let's quickly substitute counsel for those."[74]

The emails also revealed Mr. Rivers' delay in 1) notifying the Court or Trustees of his retirement and change of address; 2) notifying his clients of his retirement and change of address; and 3) finding substitute counsel were designed to retain fees for services he had yet to provide.[75]

Mr. Rivers violated La. Rules of Prof. Conduct 3.3(a)(1).  He knew that Mr. Aufrecht did not commit to take over his bankruptcy files, yet he represented the opposite to the Court in an effort to escape responsibility.  As a result, this Court issued the Aufrecht OSC based on a false representation.   This caused  Mr. Aufrecht considerable time and concern over the issuance of the Aufrecht OSC and hearing.

---

[74] Exh. A-2.

[75] At the October 5, 2017, hearing Mr. Rivers admitted that he only intended to have an attorney substitute as counsel in cases in which a problem arose.

31

### 6. Sanction

In *In re Gaharan*,[76] the debtor retained Gaharan to file a Chapter 13 bankruptcy case in November 2003, for which the debtor paid $1,500 through the Chapter 13 plan. In 2004, Gaharan advised the Louisiana State Bar Association that he wanted to go on inactive status. Gaharan did not advise the debtor that he was inactive and did not withdraw from the case.

The debtor attempted to contact Gaharan because creditors were attempting to collect debts, but was unable to reach him. The debtor's case was dismissed, and the debtor filed a Complaint against Gaharan with the Office of Disciplinary Counsel (ODC"). The ODC filed charges against Gaharan alleging violation of Louisiana Professional Conduct:

> Rules 1.4 (failure to communicate with client), 1.16(c) (failure to properly terminate the representation of a client), and 8.1(c) (failure to cooperate with the ODC in its investigation).

The ODC found that Gaharan's conduct caused the dismissal of the debtor's bankruptcy case. The Disciplinary Board reviewed the ODC's findings. The Disciplinary Board found Gaharan guilty of the charges, but found that his conduct did not cause the bankruptcy case's dismissal. The Board recommended suspension from practice of law for one year and one day.

The Louisiana Supreme Court found that Gaharan had effectively withdrawn as counsel when he assumed inactive status. Gaharan failed to inform his client that he was in need of representation. Gaharan also failed to cooperate with the ODC's investigation. The Court found failure to cooperate and "vulnerability of the victim" as aggravating factors. The Court found that the absence of prior disciplinary record was a mitigating factor. Ultimately, the Court adopted the Board's recommendation and suspended Gaharan for one year and one day.

---

[76] *In re Gaharan*, 2008-2829 (La. 4/2/09), 6 So.3d 745.

Mr. Rivers' situation is different because none of Rivers' clients suffered actual harm. However, this is not a result of Mr. Rivers' efforts.  Instead, as a result of the proactive monitoring by the Court, harm has been averted.  The reality is that left up to Mr. Rivers, none of his clients would have been represented, and but for the conduct of his secretary, many would have been harmed.[77]

Courts may order disgorgement of unearned fees pursuant to section 329(b)(1), which provides:

> If such compensation exceeds the reasonable value of any services, the court may cancel any such agreement, or order the return of any such payment, to the extent excessive to -
>
> (1) the estate, if the property transferred -
>
> > (A) would have been property of the estate, or
> >
> > (B) was to be paid by or on behalf of the debtor under a plan under chapter 11, 12, or 13 of this title; ...[78]

The Fifth Circuit has found:

> "[T]he bankruptcy court has broad authority to discipline attorneys and to award to disgorge fees paid in connection with bankruptcy proceedings." While its authority is broad, when a bankruptcy court imposes a disciplinary sanction it "must use the

---

[77] Mr. Rivers failed to appear at a total of eighteen (18) meetings of creditors and hearings.

[78] *See also* F.R.B.P. 2017(b):

On motion by the debtor, the United States trustee, or on the court's own initiate, the court after notice and a hearing may determine whether any payment of money or any transfer of property, or any agreement therefor, by the debtor to an attorney after entry of an order for relief in a case under the Code is excessive, whether the payment or transfer is made or is to be made directly or indirectly, if the payment, transfer, or agreement therefor is for services in any way related to the case.

33

least restrictive sanction necessary to deter the inappropriate behavior," and "[t]he sanction levied must thus be commensurate with the egregiousness of the conduct."[79]

Mr. Rivers failed to appear at section 341 meetings of creditors or hearings eighteen (18) times.  Any fee received by Mr. Rivers for these appearances is excessive and unreasonable.  In sixteen (16) instances, the attorney's fee for attending the section 341 meeting or hearing was not earned by Mr. Rivers, but by another attorney.

The customary fee in the District for attending hearings not contemplated by the no look fee is $350.00.  Therefore, the Court finds that $350.00 is a reasonable attorney's fee for appearance at a section 341 meeting or hearing in both a chapter 13 and chapter 7 case.

Mr. Rivers must disgorge $350.00 for each missed section 341 meeting or hearing.  For the sixteen (16) appearances where another attorney appeared in Mr. Rivers' stead, the $350.00 is payable to that attorney.[80]  For the two (2) hearings where no attorney appeared, Mr. Rivers must disgorge $350.00 for each, payable to the Chapter 13 Trustee.

In addition, Mr. Rivers will remit to substituted counsel any annual stipend accruing after July 31, 2017, in any Chapter 13 case.  In addition, as for fees remitted in Chapter 7 cases or those paid in Chapter 13, Mr. Rivers will forego (if not yet paid by the Trustee) or disgorge (if already paid by the client or Trustee) the following sums representing unearned fees:

---

[79] *Baker v. Cage (In re Whitley)*, 737 F.3d 890, 987 (5th Cir. 2013) (citations omitted).

[80] Mr. Rivers owes sanctions to Phillip K. Wallace for case 16-12272; William Cherbonnier for case 17-11243; John Menszer for cases 17-11649 and 17-11650; Wayne Aufrecht for cases 17-11683, 17-11890, 17-11891, 17-11893, 17-12233, and 17-12235; Austin Taylor for cases 17-11728 and 17-11976.  Mr. Rivers also owes sanctions to the attorneys who appeared at the section 341 meetings in cases 17-11683, 17-11890, 17-11891, and 17-11892.

| Case no. | Debtor | Chapter | Date Filed | Mtg. of Creditors | Date Confirmed | Disgorge |
|---|---|---|---|---|---|---|
| 17-11243 | Smith | Ch. 13 | 5/15/17 | 6/21/17 | 8/01/17 | $625.00[81] |
| 17-11682 | Savoie | Ch. 13 | 6/29/17 | 7/26/17 | 8/30/17 | $375.00[82] |
| 17-11683 | Terrell | Ch. 13 | 6/29/17 | 8/14/17 | 9/19/17 | $1,250.00[83] |
| 17-11728 | Reid | Ch. 7 | 7/05/17 | 8/18/17 | | |
| 17-11890 | Ducote | Ch. 13 | 7/19/17 | 8/16/17 | None[84] | $2,500.00[85] |
| 17-11891 | Jones | Ch. 13 | 7/19/17 | 8/16/17 | 9/12/17 | $1,250.00[86] |
| 17-11892 | Warren | Ch. 7 | 719/17 | 8/24/17 | | |
| 17-11893 | Bower | Ch. 7 | 7/19/17 | 8/24/17 | | |
| 17-11976 | Creel | Ch. 7 | 7/27/17 | 8/31/17 | | |
| 17-12233 | Taylor | Ch. 7 | 8/23/17 | 9/28/17 | | $1,565.00[87] |
| 17-12235 | Spears | Ch. 13 | 8/23/17 | 9/27/17 | 11/16/17 | $2,500.00[88] |

---

[81] $625.00 is 25% of the no look fee.

[82] $375.00 is 15% of the no look fee.

[83] $1,250.00 is 50% of the no look fee.

[84] On January 11, 2018, *Ducote* was dismissed on Trustee's motion for denial of confirmation and default on plan payments. Case 17-11890, P-81. The confirmation hearing and dismissal were after Mr. Aufrecht substituted as counsel.

[85] $2,500.00 is 100% of the no look fee.

[86] $1,250.00 is 50% of the no look fee.

[87] In *In re Taylor*, Mr. Rivers disclosed in the Disclosure of Compensation of Attorney for Debtor(s) attached to the Schedules of Assets and Liabilities that he received $1,230.00 in attorney fees prior to filing and that there was no balance due. Case 17-12233, P-1. However, Mr. Rivers disclosed in his Supplemental Response that he received $1,565.00. P-67.

[88] $2,500.00 is 100% of the no look fee.

35

With regard to Mr. Rivers' misrepresentations before the Court, Mr. Rivers is also sanctioned $3,500.00 for misrepresenting Mr. Aufrecht's role in this matter, payable to Mr. Aufrecht.

### C.  The Aufrecht OSC

The Aufrecht OSC was based on Mr. Rivers representation at the hearing on September 8, 2017, that prior to Mr. Rivers' retirement, Mr. Aufrecht agreed to substitute as counsel in all of Mr. Rivers open cases.[89]  Mr. Aufrecht was ordered to show cause why he should not be sanctioned for failure to timely substitute as counsel for all debtors represented by Mr. Rivers.

At the October 5, 2017, hearing Mr. Rivers admitted that he only intended to have an attorney substitute as counsel in cases in which "a problem arose." The Court finds Mr. Aufrecht's representation that he did not agree to substitute in all Mr. Rivers cases credible.  Thus, no sanctions will be imposed  against Mr. Aufrecht.

### V.  Conclusion

Mr. Rivers' Motion to Recuse is denied.

Mr. Rivers must disgorge a total of $6,300.00 for  violating General Order 2011-1, Local Rule 4002-1(D), and La. Rules of Professional Conduct 1.1, 1.3, 1.4, 1.5(f)(5), and 3.3(a)(1), and 5.5(a),  payable in units of $350.00 to each attorney and for each representation made on behalf of Mr. Rivers and in two (2) instances, to the Chapter 13 Trustee.   Mr. Rivers must also forgo receipt of any annual stipends in Chapter 13 cases payable after August 1, 2017.  Mr. Rivers must disgorge $8,500.00 in unearned Chapter 13 no look fees, as well as the total fee of $1,565.00 in *In re Taylor*.[90] He is also sanctioned $3,500.00 for misrepresenting Mr. Aufrecht's role in this matter. That sanction

---

[89] P-64, Tr. T. 9/8/17, p. 5, ll. 3-5.

[90] Case 17-12233.

36

is payable to Mr. Aufrecht.  Mr. Rivers must file Motions to Withdraw as Counsel of Record in his

active cases pending in the United States Bankruptcy Court for the Eastern District of Louisiana.

No sanctions are imposed on Mr. Aufrecht.

New Orleans, Louisiana, February 23, 2018.

Hon. Elizabeth W. Magner
U.S. Bankruptcy Judge